[No. 38086. Department One. October 6, 1966.]

THE STATE OF ALASKA, *Respondent,* v. WALTER PETRONIA *et al., Appellants.**

*Reported in 418 P.2d 755.

Vance, Davies, Roberts & Bettis, J. Duane Vance, and John M. Darrah, for appellants.

Warren Colver (Attorney General of Alaska, Michael M. Holmes, of counsel) and Aiken, St. Louis & Steere, by Charles E. Siljeg, for respondent.

HUNTER, J.—This is an appeal from a judgment entered in four consolidated cases by the Superior Court for King County. These actions were instituted by the attorney general of the state of Alaska under our reciprocal tax collection statute, RCW 4.24.140, for the enforcement of the payment by certain merchant seamen of income taxes asserted to be owed to the state of Alaska.

Of the four defendant (appellant) seamen, Walter Petro-

nia, Morris K. Nainoa and Charles Frankle are residents of the state of Washington, and John W. Massey is a resident of the state of Oregon. All, however, were covered by collective bargaining agreements between the Pacific District of the Seafarers International Union and the Pacific Maritime Association, and were hired out of the union dispatch hall in Seattle. The question of this court's jurisdiction is not raised by any of the defendants. The facts are set out in a written stipulation between counsel for the parties and are undisputed.

The defendants' duties as seamen were exclusively on board ships, relating principally to the operation and maintenance of the vessels which they were aboard. For the taxable year in question, 1960, they earned a substantial percentage of their voyage pay while the vessels upon which they were serving were within the boundaries of the state of Alaska.

The pertinent part of Title 43, Alaska Statutes, applicable to the defendants provides:

Sec. 43.20.010. Tax on individuals, fiduciaries, corporations, and banks. (a) There is levied and there shall be collected and paid for each taxable year upon the net income of every resident and nonresident individual, fiduciary, and bank that is required to make a return and pay a tax under the Federal Income Tax law a tax equal to 16 per cent of the total income tax that would be payable for the same taxable year to the United States

. . . .

Sec. 43.20.040. Income from sources in the state. (a) Income from sources in the state, for the purposes of this chapter, includes . . . (2) Income from a business, trade, or profession, and compensation for services rendered in the state . . . .

Sec. 43.20.070. Employees of interstate carriers. *The tax levied by this chapter applies to that portion of the voyage pay of vessel personnel of interstate carriers engaged in the Alaska trade which is earned in the waters of the state.* The tax also applies to that portion of the pay earned in the state of the personnel of carriers operating vehicles or airplanes on land or in the air on routes to and from the state. *In determining the portion of the voyage pay of vessel personnel earned in the waters of*

*the state, the method of allocation provided for in § 130(g) of this chapter shall be used.* (Italics ours.)

Sec. 43.20.130. Allocation of business income.

. . . .

(g) The value of vessels operating on the high seas and compensation of employees engaged in operating the vessels shall be apportioned to the state in the ratio which the number of days spent in ports inside the state bears to the total number of days spent in ports inside and outside the state. The term "days spent in ports" does not include periods when ships are tied up because of strikes or withheld from the Alaska service for repairs, or because of seasonal reduction of service. Days in port are computed by dividing the aggregate number of hours in all ports by 24. The value of aircraft and automotive vehicles operating as freight and passenger carriers from, to, and inside the state and compensation of employees so engaged are apportioned to the state in the ratio which the number of days during which the services are rendered inside the state bears to the total number of days during which the services are rendered inside and outside the state.

Applying the ratio in § 43.20.130, *supra,* the defendants earned approximately the following percentage of voyage pay while serving as seamen aboard vessels within the waters of Alaska: For the taxable year of 1960, Petronia, 17 per cent; Nainoa, 16 per cent; Frankle, 26 per cent; and Massey, a higher percentage.

The apportionment of wages earned in Alaska by the defendants, and the amount of taxes assessed them in pursuance of the statutes, are not in issue in this case. All parties agree that the sole issue is whether the state of Alaska can constitutionally levy a tax on the net income of seamen engaged in interstate and foreign commerce, where the tax is levied only on that portion of the seamen's net income which is attributed to their activity within the boundaries of the state of Alaska. The trial court held that the Alaska net income tax was constitutional and entered judgment against the defendants in the amounts due under the act, in pursuance of the stipulation. The defendants appeal.

■ Although the parties raise no question as to the jurisdiction of this court on this appeal, we have nevertheless considered the propriety of our considering, in the first instance, the issue of the constitutionality of an enactment of a sister state. We consider this normally to be the prerogative of the state wherein the legislation is enacted; however, in the instant case we have acquired jurisdiction at the express request of the attorney general of Alaska based upon the following reciprocity statutes existing between our states, by his institution of these consolidated actions:

Sec. 43.10.070 [Alaska Statute]. Reciprocity in collection of taxes. (a) The courts of the state shall recognize and enforce the liability for taxes lawfully imposed by the laws of every state or territory which extends a like comity in respect to the liability for taxes lawfully imposed by the laws of this state. The officials of a state or territory may bring action in the courts of this state for the collection of their taxes. The certificate of the secretary of state of the other state or territory that the officials have the authority to collect the taxes sought to be collected by the action is conclusive proof of that authority.

(b) The attorney general may bring action in the courts of other states or territories to collect taxes due the state.

RCW 4.24.140. Action by another state to enforce tax liability. The courts of the state shall recognize and enforce the liability for taxes lawfully imposed by the laws of any other state which extends a like comity in respect to the liability for taxes lawfully imposed by the laws of this state and the officials of such state are hereby authorized to bring an action in all the courts of this state for the collection of such taxes: *Provided,* That the courts of this state shall not recognize claims for such taxes against this state or any of its political subdivisions: *Provided, further,* That the time limitations upon the bringing of such actions which may be imposed by the laws of such other state shall not be tolled by the absence from such state of the person from whom the taxes are sought. The certificate of the secretary of state of such other state to the effect that such officials have the authority to collect the taxes sought to be recovered by such action shall be conclusive proof of that authority.

The constitutionality of the Alaska Net Income Tax Act, as it applies to these defendants, has been interposed as a defense. We therefore have no alternative other than to test the constitutionality of this enactment, in view of the reciprocity statutes, *supra*.

The defendants first contend that the Alaska Net Income Tax Act, as it applies to the defendant seamen, constitutes a deprivation of property without due process of law in violation of the fourteenth amendment to the United States Constitution.

■ The defendants admit that a state may levy a personal income tax upon a nonresident under certain conditions. But these conditions require the existence of minimum connections between the nonresident and the taxing authority. The defendants cite *Shaffer v. Carter*, 252 U.S. 37, 64 L. Ed. 445, 40 Sup. Ct. 221 (1920); *Northwestern States Portland Cement Co. v. Minnesota* and *Williams v. Stockham Valves & Fittings, Inc.*, 358 U.S. 450, 3 L. Ed. (2d) 421, 79 Sup. Ct. 357 (1959); *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 85 L. Ed. 267, 61 Sup. Ct. 246, 130 A.L.R. 1229 (1940).

We find no difficulty in ascertaining that these cases support the rule of law as stated by the defendants. In *Northwestern States Portland Cement Co. v. Minnesota* and *Williams v. Stockham Valves & Fittings, Inc., supra,* the court stated:

> It strains reality to say, in terms of our decisions, that each of the corporations here *was not sufficiently involved in local events* to forge "some definite link, *some minimum connection*" sufficient to satisfy due process requirements. (Italics ours.)

The court further stated, quoting from *Wisconsin v. J. C. Penney Co., supra,* that

> [T]he *"controlling question is whether the state has given anything for which it can ask return."* Since by "the practical operation of [the] tax the state has exerted its power in relation *to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred* . . ." it "is free to pursue its own fiscal poli-

·cies, unembarrassed by the Constitution . . . ."
(Italics ours.)

The defendants argue that the rule as applied to non-resident corporations and nonresident individuals transacting business on land within a state is not comparable to the activities of seamen on vessels within a state's waters, which are open to interstate and foreign commerce; that the benefits afforded seamen are *de minimus;* that virtually all the protection normally afforded by a state to a nonresident employee is afforded to seamen exclusively by the federal government; that virtually the only benefits available from the state of Alaska to seamen such as the defendants are the protection and benefits they are afforded by the state when they are on shore in strictly a tourist or recreational capacity.

 This argument of the defendants is impressive; however, it overlooks a most significant element considered in applying the test of benefits in determining minimum connections. Probably the most significant benefits in the eyes of these defendant seamen are the wages they contemplated receiving for their services during the course of the vessel's voyage. The business productivity generated by Alaska was accountable for the wages earned by the defendants when they were in Alaskan waters. The activity of their employment in Alaska constituted a minimum of 16 per cent of their voyage pay for the year 1960, within the meaning of the Alaska statute, § 43.20.070, *supra.* We find no distinction between business generated by the economic activities of Alaska accountable for the employment of nonresidents whether it be on land or on the water within the Alaskan boundaries. We are satisfied that the benefits of employment afforded by this economic activity of the state of Alaska constituted minimum connections within the rule to avoid a denial of due process under the fourteenth amendment to the United States Constitution.

The defendants contend that the Alaska Net Income Tax Act, as it applies to seamen, is in violation of the commerce clause of U.S. Const. art. 1, § 8, clause 3.

The defendants first argue that the tax violates a rule of

uniformity as applied to commerce; that the state of Alaska is forbidden to act in this area affecting commerce, despite the inaction of Congress, since it is an area which requires a uniform national system of regulation, and therefore requires the exclusive legislation of Congress, citing *Cooley v. Board of Wardens of Port of Philadelphia,* 53 U.S. (12 How.) 299, 13 L. Ed. 996 (1851); *Hays v. Pacific Mail S.S. Co.,* 58 U.S. (17 How.) 596, 15 L. Ed. 254 (1855); *Southern Pac. Co. v. Jensen,* 244 U.S. 205, 61 L. Ed. 1086, 37 Sup. Ct. 524 (1917); The Law of Admiralty, Gilmore & Black, (1957) pp. 43, 44.

The defendants' argument is characterized by the following pertinent quotes from the above authorities in support of this rule:

Either absolutely to affirm, or deny that the nature of this power [to regulate commerce] requires exclusive legislation by Congress, is to lose sight of the nature of the subjects of this power, and to assert concerning all of them, what is really applicable but to a part. Whatever subjects of this power are in their nature national, or admit only of *one uniform system, or plan of regulation, may justly be said to be of such a nature as to require exclusive legislation by Congress. Cooley v. Board of Wardens of Port of Philadelphia, supra,* p. 319.

If New York can subject foreign ships coming into her ports to such obligations as those imposed by her Compensation Statute, other States may do likewise. The necessary consequence would be destruction of *the very uniformity in respect to maritime matters which the Constitution was designed to establish;* and freedom of navigation between the States and with foreign countries would be seriously hampered and impeded. *Southern Pac. Co. v. Jensen, supra,* p. 217.

These latter cases are now in a sense drowned law, since Congress has enacted a Federal Longshoremen's compensation statute. . . . But, however, one may react emotionally to the bringing to bear of their high-flown vaguenesses to the barring of the tiny and doubtless pathetically needed recoveries that were at stake, it is impossible not to concede that the *major* premise they state is a sound one. *If there is any sense at all in making maritime law a federal subject, then there must be some limit set to the power of the states to interfere in the*

*field of its working.* The Law of Admiralty, Gilmore & Black, *supra*, p. 43. (Italics ours.)

■ The above cases (*Southern Pac. Co. v. Jensen, supra* and *Cooley v. Board of Wardens of Port of Philadelphia, supra*) not only characterize the uniformity argument but they also indicate that it must be applied to the facts of each case. In *Cooley v. Board of Wardens of Port of Philadelphia, supra,* the court found there was no interference with the rule of uniformity by state licensing of harbor pilots, holding that problems involving pilots were local in nature, and noting that Congress had passed an act of August 7, 1789, § 4 (1 Stat. 54), which specifically provided that regulation of pilots in bays, inlets and harbors shall be regulated by state law until further legislative provision may be made by Congress.

In *Southern Pac. Co. v. Jensen, supra,* the state of New York, by subjecting foreign ships to the obligation of her compensation statutes, was clearly interfering with a uniform system for the protection of seamen which was later recognized by the enactment of the Longshoremen's Compensation Statute, as cited in Gilmore & Black, *supra.*

In the instant case there is no attempt to regulate the activities of seamen in Alaskan waters by interference with the uniformity of the operation of the shipping industry by the imposition of the income tax on the earnings of seamen in Alaska.

■■ The difference between interference and noninterference with the rule of uniformity as it applies to maritime law is illustrated by the history of the Alaska Net Income Tax Act itself. A law similar to the one which presently exists was enacted by the Territorial Legislature in Alaska in 1949. It provided for a net income tax on seamen's wages to be withheld by their employers. In *Alaska S.S. Co. v. Mullaney,* 180 F.2d 805 (1950), this enactment was held by the Ninth Circuit Court of Appeals not to be repugnant to the commerce clause of the United States Constitution. As an outgrowth of this case, the United States Congress in 1959 passed a law, 46 U.S.C.A. § 601, prohibiting the withholding of any sums from a master's, officer's, or sea-

man's wages for state tax purposes in vessels engaged in foreign, coastwise, intercoastal, interstate, or noncontiguous trade. However, the right of the Territory of Alaska to impose taxes was not disturbed; it was only the withholding of monies from seamen's wages to which Congress directed and asserted its jurisdiction.

The defendants argue, however, that the above 1959 enactment demonstrates that the taxation of seamen engaged in coastwise trade or in foreign trade can admit only of a single system of regulation. We disagree.

Congress clearly did not base this enactment upon a determination that the imposition of the tax by the Territory of Alaska violated a constitutional rule of uniformity. Congress rather directed its action against the requirement by the Alaskan territory that shipping concerns withhold monies from seamen's wages. That this was Congress' concern is expressly disclosed by reference to its proceedings (86th Cong. 1st Sess., S. Rep. No. 433, p. 3, June 25, 1959) during consideration of the passage of the enactment:

> S. 1958 would relieve the seamen and the steamship companies of the accounting burden enumerated above; it would also clarify the legal conflict between State and Federal law.
>
> *It is to be noted, however, that this legislation will not relieve the seaman of his liability to pay taxes properly due,* will not effect the Federal withholding taxes, *and will not in any way impair the general tax authority of the States.*
>
> Comments from the Maritime Administration of the Department of Commerce and the Department of State interposed no objection to favorable consideration of S. 1958. *The Department of the Treasury, viewing the legislation as a curb on the taxing jurisdiction of a State, recommended against enactment. As noted earlier, your committee does not believe this legislation would in any way affect the right of the State to tax; it would only limit in one particular the procedures for collecting those taxes.* (Italics ours.)

■ The test of whether any particular matter is maritime in nature and is thereby precluded from state regulation or legislation is whether or not the exclusive features of

admiralty matters are involved. In *Standard Dredging Corp. v. Murphy*, 319 U.S. 306, 309, 310, 87 L. Ed. 1416, 63 Sup. Ct. 1067 (1943), the United States Supreme Court said:

When state compensation laws began to provide a remedy for maritime torts, it was at least arguable that the state remedy interfered with the existing admiralty system of relief through actions such as maintenance and cure. But in dealing with unemployment insurance "exclusive federal jurisdiction" is not affected at all. Congress retains the power to act in the field, and in the meantime, federal courts have nothing to do with it. *No principle of admiralty requires uniformity of state taxation.* Taxes on vessels and other business activities of operators have previously been upheld. (Italics ours.)

We hold that the rule requiring a uniform system regulated solely by the federal government in maritime commerce has not been violated by the imposition of taxes on earnings of seamen within the waters of the state of Alaska by the Alaska Net Income Tax Act; that Congress has not disturbed the right of a state to impose income taxes on the wages of seamen earned within its boundaries.

■ The defendants argue that the commerce clause was violated by reason that the tax imposed on seamen's wages is inconsistent with *Robbins v. Shelby Cy. Taxing Dist.*, 120 U.S. 489, 30 L. Ed. 694, 7 Sup. Ct. 592 (1887), also cited in the recent case of *Northwestern States Portland Cement Co. v. Minnesota* and *Williams v. Stockham Valves & Fittings, Inc., supra.* In that case there was an interference with the ability of an itinerant drummer, who resided in the state of Ohio, to do business in Tennessee by imposing a tax for the privilege of doing business in that state. This case is not apposite to the instant case. In *Robbins v. Shelby Cy. Taxing Dist., supra,* there was a direct interference with the right of a person to do business within a state by exacting a tax for the privilege. The Alaska Net Income Tax Act, as it applies to these seamen, makes no attempt to interfere with or control the conduct of any business. It is not a privilege tax.

■ The defendants contend that the imposition of income taxes upon them is contrary to the home port doc-

trine, which denies states other than the state of the home port the right to impose taxes on vessels engaged in lawful commerce on other than inland waters. Defendants cite *Hays v. Pacific Mail S.S. Co., supra; Ott v. Mississippi Valley Barge Line Co.,* 336 U.S. 169, 93 L. Ed. 585, 69 Sup. Ct. 432 (1949), and others. An examination of these cases discloses they are not apposite. These cases involved the exaction of personal property taxes on the vessels by states other than the state of the home port, constituting an undue burden on commerce. The instant tax is not a direct tax upon interstate commerce or the vessels engaged therein. It is rather a tax upon the income derived therefrom, properly proportioned so as to tax only that net income of seamen which is earned within the jurisdiction of Alaska.

Defendants' counsel argue that defendant Massey is subjected to multiple taxation since as a resident of Oregon he is required to pay a tax upon all of his earnings. The constitutionality of the Oregon statute is not an issue in this case. We are concerned solely with the constitutionality of the Alaska enactment, which imposes taxes only on this defendant's income earned in the jurisdiction of Alaska. There is therefore no valid multiple taxation issue raised on this record.

The trial court correctly held that the Alaska Net Income Tax Act as applied to the defendant seamen was not in violation of the commerce clause and the fourteenth amendment to the United States Constitution.

The judgment is affirmed.

ROSELLINI, C. J., HILL and HALE, JJ., and WARD, J. Pro Tem., concur.

----

December 7, 1966. Petition for rehearing denied.