INCOME TAX CASES

Docket Nos. 89406-89416. Submitted November 6, 1986, at Detroit. Decided February 2, 1987. Leave to appeal applied for.

The Department of Treasury made delinquent income tax assessments on Musa and Faid Saeed and others, all citizens of the Yemen Arab Republic who were seamen or spouses of seamen employed on ships plying the Great Lakes within and without the territorial boundaries of the State of Michigan. Petitioners, although not residents of Michigan, used Michigan addresses in connection with their federal tax returns. Petitioners applied to the Tax Tribunal for review. Both the petitioners and the Department of Treasury moved for summary disposition. The Tax Tribunal held that petitioners did not have sufficient connection with the State of Michigan to be subject to Michigan income tax. The Department of Treasury appealed.

The Court of Appeals *held*:

1. Since petitioners are nonresidents, taxable income must be allocated to Michigan to the extent it is earned, received or acquired.

2. Since in this instance the tax is on an activity involved in interstate commerce, to survive a constitutional challenge under the Commerce Clause the tax must be applied to an activity with a substantial nexus with Michigan, must be fairly apportioned, must not discriminate against interstate commerce, and must be fairly related to the services provided by the state.

3. The taxing statute is silent with regard to the method of apportionment and, thus, is constitutionally defective as to these petitioners.

Affirmed.

1. TAXATION — CONSTITUTIONAL LAW — COMMERCE CLAUSE.

A state tax on an activity involved in interstate commerce will

REFERENCES

Am Jur 2d, State and Local Taxation §§ 244 *et seq.*

Supreme Court's views as to constitutionality of federal tax legislation under Uniformity Clause of Article I, Section 8, Clause 1 of Federal Constitution. 76 L Ed 2d 868.

See also the annotations in the Index to Annotations under Taxes.

survive a constitutional challenge under the Commerce Clause where the tax is on an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state (US Const, art I, § 8).

2. TAXATION — CONSTITUTIONAL LAW — COMMERCE CLAUSE — APPORTIONMENT.

A statute providing for a tax on an activity involved in interstate commerce, to survive a constitutional challenge under the Commerce Clause, must provide for a fair method of apportionment (US Const, art I, § 8).

*Bassey & Selesko, P.C.* (by *Dennis C. Modzelewski*), for petitioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Russell E. Prins,* Assistant Attorneys General, for the Department of Treasury.

Before: HOOD, P.J., and T. M. BURNS and J. X. THEILER,* JJ.

J. X. THEILER, J. Respondent Department of Treasury appeals from orders of the Michigan Tax Tribunal granting partial summary disposition in each of these eleven consolidated cases. At issue is the ability of the department to subject petitioners to Michigan income tax. The Tax Tribunal held that petitioners, all seamen or wives of seamen employed on the Great Lakes, did not have sufficient connection with the State of Michigan to be subject to Michigan income tax. The tribunal also concluded that, if the Michigan Income Tax Act were read as broadly as respondent urges so as to bring petitioners within its scope, the act would conflict with the Commerce Clause of the United States Constitution, US Const, art I, § 8, clause 3. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Each of the petitioners is a seaman or the spouse of a seaman who provides general maintenance services on ships which ply the Great Lakes within and without the territorial boundaries of the State of Michigan. Although it is undisputed that none of the petitioners are residents of the State of Michigan, petitioners used Michigan addresses on their federal tax returns. Based on this information, the Department of Treasury made deficiency assessments against each of them for nonpayment of income tax based upon the individual seamen's earnings from personal service provided by them while plying the Great Lakes. The department contends that the income earned by the petitioners for services rendered on the Great Lakes while in Michigan territorial waters is personal income subject to taxation, regardless of the petitioners' residency status.

The statute in question is MCL 206.110; MSA 7.557(1110), which provides in pertinent part:

(2) In the case of a nonresident individual, estate or trust all taxable income is allocated to this state *to the extent it is earned,* received or acquired:

(a) For the rendition of personal services performed *in this state.* [Emphasis added.]

The matter came on for consideration by the Michigan Tax Tribunal on a motion for summary disposition filed by the petitioners and a cross-motion filed by the department. The Tax Tribunal found that there were two issues: (1) whether the petitioners were residents of the state; and (2) whether the income that they earned was subject to taxation regardless of their residency.

As to the first issue, the Tax Tribunal held that there existed an issue of fact that could not be

determined on the basis of the affidavits and material submitted to it and, accordingly, denied the petitions of both parties. On appeal, it has been stipulated that the petitioners were not residents of this state. The affidavits which had been filed with the tribunal tend to establish that each of the petitioners are from the Yemen Arab Republic, that their families still reside there, that they maintain addresses in the Detroit area (merely for postal purposes), and that they are not in this state for any substantial portion of a year.

The tribunal further made a determination that application of the statute in this instance was a taxation on an activity involved in interstate commerce and that, accordingly, it had to be considered in conjunction with *Complete Auto Transit, Inc v Brady,* 430 US 274; 97 S Ct 1076; 51 L Ed 2d 326 (1977), reh den 430 US 976; 97 S Ct 1669; 52 L Ed 2d 371 (1977). The tribunal quoted *Complete Auto* to hold:

> "[A tax will be sustained] against Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." 430 US at 279.

The tribunal also reviewed the law of Alaska, which had a statute, since repealed, which imposed a tax on the wages of seamen who were rendering personal services within the state. The tribunal noted that the Alaskan statute had provided a method of allocating those wages taxable by Alaska based on the ratio of the number of days spent in Alaskan ports to the total number of days spent in all ports inside and outside of

Alaska. The tribunal further pointed out that the application of the tax had been sustained, based on a finding that there had been a demonstration of a substantial nexus with the State of Alaska in the statutory scheme as adopted. *Sjong v Alaska Dep't of Revenue,* 622 P2d 967 (Alaska, 1981), app dis 454 US 1131; 102 S Ct 986; 71 L Ed 2d 284 (1982), and *Alaska v Petronia,* 69 Wash 2d 460; 418 P2d 755 (1966), app dis 389 US 7; 88 S Ct 36; 19 L Ed 2d 6 (1967).

In analyzing *Alaska v Petronia, supra,* the Tax Tribunal reasoned:

> The Washington court's definition of the activity is crucial to its finding of the existence of a minimum connection. The court found the essential benefit to the seamen to be the contemplation of receiving wages for services rendered while on board ship. The business productivity generated by Alaska which the court held to be accountable for these wages, and thus for the nexus, was generated not by the opening of Alaska's waters to interstate vessels, but rather the opening of Alaska's ports. In other words, the Alaska legislature chose to impose no tax or [sic] wages where the only activity involved was the performance of services on board interstate vessels which merely plied Alaska waters without putting into port.

The tribunal also noted:

> [I]n the instant case[,] the only activity of Petitioners alleged by either party is the rendering of services by Petitioners on board ships that ply Michigan waters. No allegation is made as to [the] number of days spent in Michigan ports, or as to any nexus with Michigan other than the plying of Michigan waters. Without more, merely plying Michigan waters, although undisputedly a nexus with Michigan, cannot be said to be a substantial nexus.

The tribunal further acknowledged the practical difficulties inherent in requiring petitioners to establish the basis upon which the income that they earned was to be apportioned. It concluded:

> It further appearing to the Tribunal that MCLA 206.110(2)(a) does not fairly apportion to this state wages earned by Petitioners. While in most cases the determination of those personal services rendered "in this state" is a relatively simple matter, the burden of such a determination, in the instant case, would be onerous. Petitioners are not officers and navigators of ships on the Great Lakes; they are ordinary seamen who swab decks and work in the engine rooms and galleys of freighters. Furthermore, the allocation to this state of income for wages earned while in Michigan waters is peculiarly within the powers of the legislature. As a quasi-judicial agency, the Tribunal is powerless to engage in a legislative, or quasi-legislative function.

We agree with the tribunal's analysis of the basis for the tax. There is no attempt on the part of the Legislature to define what constitutes a proper method of apportionment of total income to that earned within the State of Michigan. The statute is silent as to the method of apportionment. Accordingly, the petitioners would have the onus and the obligation of making a proper determination of what constitutes a proper apportionment. It is our opinion that the statute, if it is to be applied, cannot thus shift the burden of making that determination of the activities being taxed. Would the petitioners be obligated to apportion a part of their income on the basis of the time spent sleeping while on board ship? Is the amount to be apportioned to be based on the number of miles that are traveled while the ship is plying Michigan waters? Is the apportionment to be on a daily,

weekly, monthly, or yearly basis? The statute is absolutely deficient in specifying the tax base upon which it is to be levied.

This is an attempt to collect taxes on the income that is derived from services rendered. While statutory standards are provided as to other activities, they are not applicable to the activity being taxed here. No specific standards are provided in the section involved here. Whether in an individual case the statute is determined to be applicable by some ad hoc standard that is developed as to that particular case, it would be purely happenstance that the application of the statute would meet the standard as required by federal law in imposing a tax that has a burden upon interstate commerce. A state tax statute will withstand commerce clause challenge when

> [the tax] is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State. [*Japan Line, Ltd v Los Angeles Co,* 441 US 434, 444-445; 99 S Ct 1813; 60 L Ed 2d 336 (1979).]

See also, *Complete Auto Transit v Brady, supra,* and *MCI Telecommunications Corp v Dep't of Treasury,* 136 Mich App 28, 33; 355 NW2d 627 (1984), lv den 422 Mich 883 (1985).

Even if the statute were to have sufficient standards for its reasonable application, a serious question exists as to whether or not income derived merely from services provided on ships plying the Great Lakes has a sufficient nexus with the state to justify the imposition of such a tax for that activity.

In *Wisconsin v J C Penney Co,* 311 US 435, 444; 61 S Ct 246; 85 L Ed 267 (1940), the Supreme

Court set forth the basic test for determining whether there is a minimum connection sufficient to justify taxation:

> [W]hether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. [*Id.,* p 444.]

In the instant case, it may well be that those services are rendered. Nevertheless, how they are rendered is not demonstrated nor is a rational basis for determining their presence suggested. Thus, Michigan's tax law stands in marked contrast to the Alaskan statute upheld in *Alaska v Petronia, supra,* and *Sjong v Alaska, supra.*

The state contends that the petitioners

> [f]ailed to sustain their burden of proof of exactly where their income was earned, i.e., what portion was earned in Michigan and what portion was earned outside of Michigan.

The state contends that it was the obligation of the petitioners, since they admit that at least a portion of their services are rendered in Michigan waters, to carry the burden of proof and

> [t]hey should have come forward and established which portion of the compensation they have received is derived from services rendered within the State of Michigan upon waters of the Great Lakes.

The Tax Tribunal's opinion tended to accept the position of the state in finding that the petitioners had the burden to rebut the assessment levied by the tax department. However, this does not determine whether or not the statute itself is valid under Commerce Clause analysis. The failure to

specify any criteria or standards by which the apportionment is to be made means that the statute, if interpreted as respondent urges, would be invalid. We decline to render such an interpretation. *State Bar of Michigan v City of Lansing,* 361 Mich 185, 195; 105 NW2d 131 (1960).

The state contends that those waters of the Great Lakes that are contained within its boundaries are subject to its jurisdiction. We are directed to cases that hold that the exercise of the state's police power over activities within those waters is permissible. Appellant cites *Lake Carriers' Ass'n v Kelley,* 527 F Supp 1114 (ED Mich, 1981), aff'd 456 US 985; 102 S Ct 2264; 73 L Ed 2d 1280 (1982), reh den 458 US 1116; 102 S Ct 3500; 73 L Ed 2d 1378 (1982), where the Michigan Watercraft Pollution Control Act, requiring marine toilets on watercraft, was upheld by the federal district court as a valid exercise of the state's police power over activities on the Great Lakes. We are also directed to *People v Duvall,* 243 Mich 498; 220 NW2d 785 (1928), where the state was exercising jurisdiction over criminal conduct on the waters of the Great Lakes within the state boundaries, and *People v Massey,* 137 Mich App 480; 358 NW2d 615 (1984), lv den 422 Mich 930 (1985), which upheld the constitutionality of a Michigan statute regulating the removal of shipwrecks, artifacts, and other items from bottomlands of the Great Lakes. We recognize that a state has concurrent jurisdiction with the federal government on these navigational waters and may adopt regulations so long as the federal government has not preempted the field. That, however, is not determinative of whether or not the exercise of that jurisdiction in imposing taxes is valid.

Accordingly, the Michigan Tax Tribunal is affirmed.