### SMITH v. ROBINSON.  (No. 7840.)

Court of Civil Appeals of Texas.  San Antonio.  Nov. 18, 1927.

Rehearing Denied Dec. 14, 1927.

Innkeepers ⬤➡11(12)—Whether hotel designating garage for guest's automobile was liable for wrecking thereof by joy-riding bell hop off duty held for jury.

Whether hotel guest who intrusted his automobile to doorman to be placed in a garage, which doorman told him was the "hotel garage," and which, though not owned by it, was one with which it was in such close relation that its employees called it "the garage," was entitled to recover of hotel for damage thereto, where bell boy, after driving it to the garage and receiving a storage receipt, later when off duty, and after midnight, got it from garage employee and took it out for a joy ride, wrecking it, *held* jury question.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by Harrison Smith against Wallace N. Robinson. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Birkhead, Lang & Beckmann, and H. K. Stanard, all of San Antonio, for appellant.

Ball & Seeligson, of San Antonio, for appellee.

FLY, C. J. Appellant sued appellee, as the operator and proprietor of the St. Anthony Hotel, for damages resulting from the wreckage of a fine and comparatively new automobile which occurred through the negligence of appellee. The court instructed a verdict for appellee, and judgment was accordingly rendered in favor of appellee. The cause was appealed and is now before this court for consideration.

The trial court having taken the case from the jury, it becomes necessary for this court to review the facts in order to arrive at a conclusion as to the legality and propriety of the instructed verdict. Appellant with his wife and two lady friends, Mrs. Charles W. York and Mrs. Sharp, all of Oklahoma City, Okl., arrived in the Lincoln automobile, which had been driven from his home by its owner, the appellant, to San Antonio, at the St. Anthony Hotel, and stopped at one of its north entrances, where they were met by a doorman, in the uniform of the hotel, who opened the door of the automobile and, while the owner went in ahead of the ladies to secure reservations, took out the luggage and called for bell boys, who took it into the hotel. The doorman, while appellant was securing accommodations from the hotel, asked Mrs. Smith if he should have the automobile placed in the garage, and she asked "what garage," and he said "hotel garage." She then told him that was all right, and that they would not need the car that night. About that time appellant returned and, seeing some one driving off in his car, asked about it, and his wife told him the doorman was taking it to the hotel garage, and he expressed his satisfaction. The automobile was in fact driven from the hotel to the place of business of the Citizens' Garage & Battery Company, known as the "Citizens' Garage" and deposited therein; the boy receiving therefor a ticket or receipt. This was on May 2, 1924, and at or about 2 o'clock the next morning, the bell boy who had delivered the car to the garage, his day's work having ended and having divested himself of the hotel livery, returned to the garage, where a trusting and complacent employee, at that "wee sma" hour, delivered the automobile to him and he took it out, presumably on a "joy ride," and wrecked it. It was shown that it would have cost about $1,200 to have repaired the car, and after being repaired it would probably have been worth $1,500 or $2,700. The hotel manager swore that:

"The bell boys and porters were instructed not to handle any automobiles, but to notify the garage to come and get an automobile of a guest, if the guest so desired. The man at the front entrance was the man supposed to perform the usual duties of a doorman at a hotel, which duties were to open the automobile door and render any assistance, in the way of service, to the guests or the party in the automobile, whether it was a visitor or a guest."

The doorman and the bell boys were authorized to telephone "the garage" so the automobile could be taken to the garage. The manager swore that the bell boys may have, before May 2, 1924, taken cars to the garage, but he did not know of it.

It will be noted from the facts narrated that, while the bell boys had no authority to take the automobiles of guests to "the garage," they did have full authority to notify "the garage" to send for the automobiles. On this occasion the bell boy did not notify the garage to come for the car, but assumed the duty of driving it there himself. The ho-

---

tel assumed the duty of caring for the automobile, at least so far as intrusting it to an employee of the garage called by it. It assumed the duty of placing the property of its guests in the hands of the employee of a garage selected by it for safe delivery to the garage. One of the employees of the hotel, owned and controlled by appellee, did all that the employee of the garage could have done by delivering the automobile of appellant safely to the garage. The hotel management had through its employee selected the garage to care for the automobile and return it to its owner. The guest had placed the automobile in the hands of the hotel, and it undoubtedly owed him the duty of using ordinary care in selecting the garage to safely keep and return the automobile to its owner. By the very instructions given to the porters and bell boys, they were authorized to receive the automobile and notify some garage to come for it. The guest was authorized to assume that the duty would be performed with reasonable care, and that the hotel would place the automobile in some safe place where reasonable care would be exercised in protecting the property. The garage selected in this instance, while not the property of the hotel company, was one with which it was in such close relation that its officers and employees named it "the garage" amidst the scores of garages in the city of San Antonio. The bell boy needed no instructions, but unhesitatingly drove the car to the "Citizens' Garage," and when it became necessary to ascertain the location of the car next day "the garage" was called upon for the information. Whether the garage chosen for storing the automobile was one that was customarily used by appellee in storing the cars of guests, the duty rested upon it to select a garage with at least ordinary care, and if he selected a place where gross negligence was shown in protecting and securely keeping the property, a question arose for the jury to decide and the issue should not have been peremptorily taken from them.

The automobile was undoubtedly placed in the hands of employees of appellee by appellant, and the property was lost or destroyed. It does not matter that the doorman, bell boys, and porters were not permitted to drive the cars of guests to garages, they were empowered to receive the automobile and place it safely in the hands of a responsible, reliable garage, and in performing this duty the exercise of reasonable care was incumbent upon appellee. Howth v. Franklin, 20 Tex. 798, 73 Am. Dec. 218. The employees were empowered to receive automobiles of guests and deliver them to the servants of garages selected by them or their employer, and appellant had the right to presume that his property would be safely kept, and that the employees had the right to take charge of the property. 14 Ruling Case Law, §§ 26, 27, pp. 526, 527. Appellant was not bound by the secret instructions given by appellee to his employees.

It is stated in the brief of appellee:

"It appeared from the undisputed evidence that even if defendant's bell boy had authority to place said automobile in the 'Citizens' Garage,' he did place said automobile in said garage in a safe manner, but at a time when he was not in the service of the defendant or the hotel operated by the defendant, he feloniously took said car from said garage for his own pleasure and damaged same."

If appellee failed to exercise proper care in storing the car, but placed it in a garage where gross negligence was imputable, and his employee was permitted to take the property and destroy it, appellee should be held guilty of negligence. The automobile was delivered to his employees and they received it, as they were authorized to do, and appellant had the right to look to appellee for the safekeeping of the automobile, and appellee would be held liable for not using reasonable care to protect and return the property, whose custody he voluntarily assumed.

The only duties of the doorman, it is stated in the brief of appellee, was to open automobiles for passengers to alight therefrom and to assist in the removal of baggage, but that same doorman, although, as emphasized by appellee, only a negro, was authorized to inquire as to storing the car and notify a garage to send for the car, and the duty did not devolve on appellant to hunt up the proprietor and ascertain how much authority the doorman had. He could assume that appellee would not place an employee at the door of his hotel who would mislead and deceive his guests. Appellee in equity and good conscience is estopped to deny the authority of his doorman to make the representations he did.

Appellant was a stranger, from another state, seeking accommodations for himself and lady companions in the hotel controlled by appellee, and was greeted at the entrance of the hotel by an employee who inquired if the automobile should be placed in the hotel garage and assumed the responsibility of placing the automobile in the garage. He not only had apparent but actual authority to see that the car was placed in a garage where it would be carefully kept. Appellant could assume that the doorman and the bell boys had the authority to store and safely keep the automobile. They did have the authority. Appellee is estopped to deny the authority of his employees to receive the car and deliver it to a careful custodian. When it assumed the custody of the car, it became the duty of the hotel to see that the car was safely stored and that a receipt for it was given the guest. The negligence of the hotel was the proximate cause of the injuries to the automobile.

The cause should have been submitted to the jury under appropriate instructions. The judgment is reversed and the cause remanded.