## No. 17,741.

### RICHARD F. BIDLAKE *v.* SHIRLEY HOTEL COMPANY.

(292 P. [2d] 749)

Decided January 23, 1956.   Rehearing denied February 14, 1956.

Messrs. BANNISTER, WELLER & FRIEDRICH, Mr. JOHN R. HICKISCH, Mr. WILLIAM H. HAZLITT, for plaintiff in error.

Messrs. Phelps and Wittelshofer, Mr. Robert L. Gee, Dolores B. Koplowitz, for defendant in error.

*En Banc.*

Mr. Chief Justice Alter delivered the opinion of the Court.

Richard F. Bidlake began an action against Shirley Hotel Company, a corporation, to recover the sum of $764.62 allegedly due him by reason of damages to his automobile and loss of personal property while a guest of defendant's hotel. Upon trial to the court and at the conclusion of all of the evidence, judgment was entered in favor of defendant. Plaintiff is here by writ of error seeking a reversal of this judgment.

The complaint contains two causes of action (claims) and upon trial the first thereof was by plaintiff dismissed, so that we are here concerned with the second cause of action (claim) only.

In the second claim it is alleged that defendant is a Colorado corporation engaged in operating the Shirley-Savoy Hotel in Denver, and that as a part of its hotel business it provides storage for automobiles of its guests, receiving the same at the entrance of its hotel. Further, that on April 26, 1950, plaintiff delivered to defendant his automobile and the contents thereof to be by it safely and securely kept for plaintiff and returned to him upon his request therefor. Further, that on the 27th day of April, 1950, when plaintiff requested the return of his automobile and its contents, it was found that the contents had been abstracted and the automobile had been damaged, all through defendant's carelessness and negligence with the resulting damages.

Defendant filed its third party complaint, naming therein as third party defendant Larry Rummerfield, who at all times mentioned in plaintiff's complaint was defendant's employee engaged as its night porter. At the

time of the trial defendant's third party complaint was dismissed for reasons that are wholly immaterial here, and neither plaintiff nor defendant make any contention that by so doing the court prejudiced their rights.

Defendant, for answer to the plaintiff's second claim, denies that it provides storage for the automobiles of its guests; denies that on the 26th day of April, 1950, plaintiff delivered his automobile and the contents thereof to defendant to be safely and securely kept for him and redelivered at his request; denies on information and belief that thereafter and on April 27, 1950, plaintiff requested redelivery of his automobile and the contents and denies that through its negligence and carelessness to discharge its duty with respect to the automobile and contents, and through the negligence and improper conduct of defendant and its servants, the automobile was damaged and the contents thereof lost.

For a third defense to plaintiff's second claim, defendant alleges that it is informed and believes and upon such information and belief states the fact to be that on April 26, 1950, while plaintiff was a guest at defendant's hotel, one Rummerfield took plaintiff's automobile for the purpose of delivering the same to a garage and converted the same to his own use, and, as a result thereof, it was damaged as in the complaint alleged, all without authority from defendant.

The evidence necessary for our consideration in determining this case is practically undisputed. Plaintiff became defendant's guest on or about the 26th of April, 1950, and as he drove to the entrance to the hotel preparatory to registering, he affirmatively answered the employee's question that he desired his car stored. He delivered the keys of his car to Larry Rummerfield, an employee of the hotel, engaged as a night porter. Plaintiff's automobile was delivered to Rummerfield for the purpose of having it stored, but instead of so doing Rummerfield used it for a "joy-ride" and damaged the car; upon it being recovered, valuable personal property in

the glove compartment had been abstracted. The Shirley Garage, in which plaintiff's automobile was to have been stored, was independently operated and located in the immediate vicinity of defendant's hotel.

Defendant's evidence was to the effect that its manager had instructed an employee, who was supervisor of certain subordinate employees of whom Rummerfield was one, that no one of them, except the supervisor and the doorman, should ever drive or move a customer's automobile except in an emergency, and in event of an emergency only the supervisor and the doorman were authorized to move the guest's automobile. The Shirley Garage was to provide shag-boys for the pick-up and delivery of all guests' automobiles. The hotel manager testified that it was not the custom in Denver to permit porters or bellhops to drive automobiles of guests arriving by automobile.

Rummerfield did not testify, but the hotel manager testified as to the procedure which was followed when a guest driving an automobile arrived at the hotel.

"The guest would drive up in front of the hotel, the doorman would greet the guest and ask if he—what he would like to have done with his car. At that time, if he said he would like to have it put in the garage, the Shirley Garage was called, and they picked it up and stored it for him. * * * The mechanical procedure was that if the guest said he wanted the car stored, the doorman would take the keys from him and give him the claim-check from the garage, call the garage, and when the shag-boy came over the doorman would surrender the keys and the claim-check to the shag-boy from the garage.

\* \* \*

"Q. Then, when the door-keeper has asked the guest, as you described it, whether he wanted to store the car, and the guest answers 'yes,' what actually does the door-keeper do?

"A. He requests the keys be left in the car; he gets a

claim-check from the porters' headquarters desk, notes the name of the guest on the check, phones the garage where they have an extension phone to the garage, and asks that—requests that they send a shag-boy after it. When the shag-boy arrives, he is given the keys and the claim-check — the stub. The claim-check, I suppose, would be part the guest keeps. And the other half is given to the shag-boy from the garage."

Defendant's doorman, who was on duty during April 26, but had left for the day prior to the arrival of plaintiff, was called to testify and stated in answer to a question:

"Sir, if a customer drives in front of the hotel, after his bag has been taken care of, he might ask about his car, and I would say that we have facilities that I might call and have your car picked up; or, 'you can take it yourself and have it parked'; * * * Then I ask for his keys, and I call by telephone—there is a direct line to the garage that the hotel used—for a shag-boy to come and pick it up. Q. That's right. And according to what you have said, you asked them if they wanted you to take care of the car and see if it was to be taken to the garage, is that right?

"A. That's right."

It is undisputed that defendant's doorman authorized so to do, actually took possession of the guests' keys and delivered to them a claim-check by means of which they could regain possession of their automobiles by paying to the shag-boy the charges for storage and such other service as might have been rendered by the garage if the automobile was delivered to the owner at the hotel, or by paying those in charge of the garage if the owner went there to regain possession of it.

██ Rummerfield, on the evening in question when plaintiff arrived at the hotel, was wearing a uniform such as was customarily worn by defendant's employees, and when plaintiff delivered the keys to Rummerfield, his automobile was then in the possession of the hotel.

Under the evidence disclosed by the record here, plaintiff was under no duty to inquire as to Rummerfield's limited authority in connection with automobiles delivered to defendant for storage. The fact that defendant had no financial interest in the Shirley Garage or its storage and service charges is likewise unimportant. Defendant had vested Rummerfield with apparent authority to accept on its behalf the delivery of plaintiff's automobile for storage. To hold otherwise would impose upon a guest in registering at a hotel a duty to inquire of the hotel employees with whom he comes in contact exactly what they are authorized to do and the limitations on their authority, and because the statements of such employees would not be binding on the employer, he would be under the additional duty of securing the employer's corroboration of the employee's statement as to his authority. The presumption is that the employee of the hotel has authority to do anything that is usually and customarily done by persons in a like position.

Defendant admits that its employee who assumed custody and control of plaintiff's automobile under the circumstances related here, did not store it, but instead used it for a "joyride" and left it on a public street a short distance from the hotel, where it was found the following morning by its owner. It is undisputed that plaintiff's automobile was damaged by this employee and a camera and other articles in the glove compartment removed or stolen.

The only question necessary for our determination is the liability of defendant for the damage to the automobile and value of the personal property abstracted from the car.

Our statute (C.R.S. 1953-68-1-11) provides:

"The landlord or keeper of any hotel or public inn shall not be liable for loss of or damage to the property of any guest or patron of such hotel or public inn by fire or by any unforeseen causes or by inevitable accident, unless such loss of or damage shall occur on account of

his negligence or the negligence of his servants or employees."

We have read and considered carefully all of the decisions of this court in which the liability of an innkeeper has been considered and determined, and find no one of them helpful or applicable to the factual situation presented by this record.

The following decisions, some of which are based upon facts almost identical to those in the instant case, in holding the innkeeper liable, meet with our approval and announce a correct principle of law which governs this case: *Merchants Fire Assur. Corporation of N.Y. v. Zion's Securities Corporation,* 109 Utah 13, 163 P. (2d) 319; *Zurich Fire Ins. Co. of N.Y. v. Weil* (Ky. App.) 259 S.W. (2d) 54; *Park-O-Tell Co. v. Roskamp,* 203 Okla. 493, 223 P. (2d) 375; *Todd v. Natchez-Eola Hotels Co.,* 171 Miss. 577, 157 So. 703; *Smith v. Robinson* (Tex. Civ. App.) 300 S.W. 651.

Under the evidence here defendant is liable to plaintiff for such loss as he may have sustained as a result of damages to his car and the value of his personal property abstracted from the glove compartment in his automobile at the time of the delivery thereof to defendant's employee. The trial court erred in entering judgment for defendant.

The cause is remanded with instructions to set aside the judgment and for further proceedings in accordance with the views herein expressed.