[Civ. No. 43602. First Dist., Div. Three. Oct. 27, 1978.]

PACIFIC DIAMOND COMPANY, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY
OF SAN FRANCISCO, Respondent;
HILTON HOTEL CORPORATION, Real Party in Interest.

## COUNSEL

Bancroft, Avery & McAlister, Sandra J. Shapiro and Michele D. Robertson for Petitioners.

No appearance for Respondent.

Bronson, Bronson & McKinnon, Robert C. Gebhardt and Peter B. Logan for Real Party in Interest.

Dunne, Phelps & Mills, Clayton R. Jackson and James O. Abrams as Amici Curiae for Real Party in Interest.

## OPINION

**FEINBERG, J.**—This case comes before us on a petition for a writ of mandate brought by the plaintiff in the court below. The Supreme Court granted an alternative writ and then transferred the cause to this court.

The facts, for purposes of this writ, were stipulated to at the trial court. They are as follows:

Torczyner is the president and sole shareholder of Pacific Diamond Company, Inc., (petitioner) a California corporation engaged in the sale, at wholesale, of diamonds. Torczyner travels throughout the United States as a salesman of diamonds, which diamonds he carries with him. On October 17, 1969, Torczyner registered as a guest at the Denver Hilton Hotel in Denver, Colorado, for the purpose of carrying on his diamond business in Denver over the following several days. He was scheduled to depart from the hotel on October 22, 1969. During his stay, Torczyner would place the diamonds in the hotel safety deposit box provided therefor at such times as he did not need the diamonds in pursuit of his business. When Torczyner did need the diamonds for his business, he carried them in two wallets in his pockets. Torczyner had stayed at the hotel on prior occasions using the safety deposit box as a place of safekeeping for his diamonds. It appears that it was known to several Denver Hilton Hotel employees that Torczyner carried diamonds of considerable value.

On the morning of October 22, 1969, Torczyner removed his gems from the hotel safe and left the hotel to make some business calls. He returned to the hotel at about 1 p.m. for the purpose of packing and checking out. The hotel had been informed as to his departure plans. Instead of placing the diamonds in the safety deposit box and then going to his room, Torczyner carried the diamonds to his room. Upon entering his room, Torczyner was assaulted by two men who beat him and robbed him of the diamonds. The diamonds had an invoice cost to Pacific Diamond of $150,012.39.

Pacific Diamond filed suit in San Francisco against the Hilton Hotel Corporation (real party in interest), a Delaware corporation which operates the Denver Hilton, for damages arising out of the diamond robbery.

After issue was joined in the trial court, petitioner moved for a bifurcated trial on the issues of whether Colorado or California law was the applicable law and the proper construction of the applicable law to the facts as recited above. The trial court granted the motion.

Ultimately, the trial court held as follows:

1. California law is the applicable law;

2. Under California law, $250 is the maximum recovery that plaintiff may have; and

3. If Colorado law is the applicable law, then $5,000 is the maximum recovery plaintiff could secure.

Petitioner contends in this proceeding that either

1. Colorado law is the applicable law and that under Colorado law, Hilton is liable *without limitation as to damages* either upon

(a) strict liability under the common law doctrine of innkeeper's liability; or

(b) for its own negligence under the facts of this case; or in the alternative

2. The limitation upon liability of an innkeeper for its own negligence provided by the statutes of California or Colorado, whichever may be the applicable law, is unconstitutional.

Thus, petitioner argues, it is entitled to proceed to trial on a cause of action *for the full amount of its provable loss and damages.*

I. *Which is the proper substantive law to apply—California or Colorado?*

██ It seems reasonably clear under California law that where a choice of law question arises, the determination is made by applying a governmental interest analysis. (*Reich* v. *Purcell* (1967) 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727]; *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574 [114 Cal.Rptr. 106, 522 P.2d 666]; *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719]; *Offshore Rental Co.* v. *Continental ·Oil Co.* (1978) 22 Cal.3d 157 [148 Cal.Rptr. 867, 583 P.2d 721].)

Since the statutes of 1895, California has limited the liability of innkeepers and hotel keepers for losses of or injuries to personal property without substantial change. California Civil Code section 1859 provides: "The liability of an innkeeper, hotel keeper, operator of a ·licensed hospital, rest home or sanitarium, furnished apartment house keeper, furnished bungalow court keeper, boarding house or lodging house keeper, for losses of or injuries to personal property, is that of a depositary for hire; provided, however, that in no case shall such liability exceed the sum of one hundred dollars ($100) for each trunk and its contents, fifty dollars ($50) for each valise or traveling bag and contents,

ten dollars ($10) for each box, bundle or package and contents, and two hundred fifty dollars ($250) for all other personal property of any kind, unless he shall have consented in writing with the owner thereof to assume a greater liability."

A depositary for hire "must use at least ordinary care for the preservation of the thing deposited." (Cal. Civ. Code, § 1852.)

Further, since 1872, California has provided for limited liability where the inn or hotel maintains a fireproof safe for the safekeeping of articles of small compass and unusual value and gives notice to that effect. California Civil Code section 1860 provides: "If an innkeeper, hotel keeper, operator of a licensed hospital, rest home or sanitarium, boarding house or lodging house keeper, keeps a fireproof safe and gives notice to a guest, patient, boarder or lodger, either personally or by putting up a printed notice in a prominent place in the office or the room occupied by the guest, patient, boarder, or lodger, that he keeps such a safe and will not be liable for money, jewelry, documents, furs, fur coats and fur garments, or other articles of unusual value and small compass, unless placed therein, he is not liable, except so far as his own acts shall contribute thereto, for any loss of or injury to such articles, if not deposited with him to be placed therein, nor in any case for more than the sum of two hundred fifty dollars ($250) for any or all such property of any individual guest, patient, boarder, or lodger, unless he shall have given a receipt in writing therefor to such guest, patient, boarder or lodger."

It is plain, then, that for over 80 years, the common law rule of strict liability has *not* been the law in California. (See *Gardner* v. *Jonathan Club* (1950) 35 Cal.2d 343, 351 [217 P.2d 961]; *Federal Ins. Co.* v. *Beverly Hills· Hotel Corp.* (1962) 202 Cal.App.2d 120, 125 [20 Cal.Rptr. 502].) It is plain, too, that the legislative policy has been to limit liability even when the innkeeper or hotel keeper, by his own negligence has occasioned the loss of or damage to the personal property of the guest.

Thus, the California governmental interest is to protect the innkeeper within its territorial jurisdiction against unlimited liability. However, in the case at bench, the hotel in question is a Colorado hotel. California can have no interest in limiting the liability of a hotel outside its territorial limits.[1]

---

[1]Real party suggests that since it is licensed to do business in California, it is a resident of California and, therefore, California has an interest in protecting it against excessive

Insofar as petitioner is concerned, it cannot be said that California has any interest in seeing that petitioner, though a California corporation, should be able to recover according to proof of damage for, as we have just shown, California's own governmental interest vis-à-vis guest and hotel keeper is to limit the recovery by the guest from the hotel. The only interest California can have in petitioner is to protect it, as a California corporation, against discrimination in another state. No contention is made nor could it be made that Colorado in any way discriminates against California guests in Colorado hotels.[2]

We conclude, therefore, that California has no interest in applying its law to this case.

But when we examine Colorado's governmental interest in this case, the situation changes.

Colorado, too, has statutes pertaining to the liability of innkeepers and hotel keepers.

At the time of the incident in question, the 1963 Revised Statutes of Colorado sections 68-1-5 and 68-1-6 (these sections were renumbered 12-44-105 and 12-44-106 in the 1973 Colorado Revised Statutes) provided as follows:

"Every landlord or keeper of a hotel or public inn in this state, who shall provide in the office of his hotel or inn, or other convenient place, a safe, vault, or other suitable receptacle, for the secure custody of money, jewelry, ornaments or other valuable articles, other than necessary baggage, belonging to the guests or patrons of such hotel or public inn, and shall keep posted in a public and conspicuous place in the office, public room and public parlors of such hotel or public inn, and upon the inside entrance door of every public sleeping room in such hotel or public inn, a notice printed in English, stating such fact, shall not be liable for

damages. (See Rest.2d Conf. of Laws, § 11, com. *l*, pp. 46-47.) While California may have some interest in protecting real party's financial security by limiting damages (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d at p. 585) real party is a corporation doing business throughout a considerable part of the world. Under the facts of this case, California would not appear to have any greater interest in protecting the financial well-being of real party than Colorado or any of the states or foreign nations where real party does business.

[2]Interestingly enough, petitioner is afforded substantially greater protection as a guest under Colorado law than he is as a guest under California law as a comparison of the analogous statutes cited in the text of this opinion discloses.

the loss of any money, jewelry, ornaments, or other valuable articles, other than necessary baggage, sustained by such guest or patron by theft or otherwise, unless such guest or patron shall deliver such money, jewelry, ornaments or other valuable articles, other than necessary baggage, to the landlord or keeper of such hotel or public inn, or person in charge of the office of such hotel or public inn, for deposit in such safe, vault or other receptacle. Such liability shall not be greater than the amount at the time of deposit declared by the guest or patron to be the value of the article deposited." (Colo.Rev.Stat. 1963, § 68-1-5.)

"No landlord or keeper of any hotel or public inn shall be obliged to receive such property from any guest or patron for such custody under the provisions of Section 68-1-5, exceeding in value the sum of Five Thousand Dollars, nor shall he be liable for any loss thereof by theft or otherwise in the sum exceeding the sum of Five Thousand Dollars, unless the landlord or keeper of such hotel or public inn, or person in charge of the office, assumes in writing a greater liability." (Colo.Rev.Stat. 1963, § 68-1-6.)

While the Colorado statutes differ from the California law, Colorado has, as California has, abrogated the common law doctrine of strict liability where the inn or hotel makes available a safe for valuables and posts the required notices. Further, Colorado has, in this aspect, put a limit in any event, upon recovery, albeit a more generous limit than California.

The purpose of the innkeeper statutes in Colorado is to protect domestic inns and hotels against strict liability and unlimited recovery. Thus, Colorado does have a valid governmental interest in seeing that its innkeeper statutes are applied to inns or hotels situated within its territorial boundaries.

This case presents, then, as in *Reich* v. *Purcell, supra,* and *Hurtado* v. *Superior Court, supra,* and unlike *Bernhard* v. *Harrah's Club, supra,* a "false conflict." Based upon our analysis that only Colorado has a governmental interest in the case, we conclude that Colorado law is the appropriate law for the case and the trial court erred when it ruled otherwise.

II. *The application of Colorado law to the stipulated facts.*

Heretofore we have set forth section 68-1-5 and section 68-1-6 of the 1963 Colorado Revised Statutes. There remains to be noted one

additional section, section 68-1-11, of those revised statutes (renumbered 12-44-111 in the Colorado 1973 Revised Statutes) before beginning our analysis.

Section 68-1-11 provides: "The landlord or keeper of any hotel or public inn shall not be liable for loss of or damage to the property of any guest or patron of such hotel or public inn by fire or by any unforeseen causes or by inevitable accident, unless such loss of or damage shall occur on account of his negligence or the negligence of his servants or employees."

Petitioner reads sections 68-1-5, 68-1-6 and 68-1-11 as follows: If the hotel has a safe and posts then strict liability of the hotel is limited to $5,000 if the guest places his valuables in the safe, under the provisions of sections 68-1-5 and 68-1-6, but liability is unlimited if a loss occurs through the hotel's negligence. However, if the hotel has a safe and posts but the guest chooses not to place his valuables in the safe, then, under section 68-1-11, the hotel has (a) unlimited liability if the loss or damage occurs on account of the hotel's negligence and is caused by fire, unforeseen causes or unavoidable accident and (b) unlimited liability on a theory of strict liability if the loss is caused by other than fire, unforeseen causes or unavoidable accident.

Therefore, petitioner asserts, since the diamonds were not in the safe at the time of the robbery, sections 68-1-5 and 68-1-6 do not apply, but section 68-1-11 does apply. Since robbery is not an unforeseen cause, unlimited recovery based upon strict liability is the applicable theory of law to be applied to the case at bench.

Petitioner relies upon two Colorado cases in support of this thesis: *New Albany Hotel Co.* v. *Dingman* (1919) 66 Colo. 306 [181 P. 126] and *Bidlake* v. *Shirley Hotel Company* (1956) 133 Colo. 166 [292 P.2d 749]. *New Albany Hotel Company* is cited for the proposition that the robbery here was not an "unforeseen cause" within the meaning of section 68-1-11. In *New Albany Hotel Company* a theft or burglary was involved and it was held not to be an "unforeseen cause" within the meaning of a substantially identical predecessor statute to section 68-1-11. Neither real party nor we quarrel with the proposition that a robbery in a hotel is not an "unforeseen cause." *Bidlake* v. *Shirley Hotel Company, supra,* appears to be cited by petitioner as holding that where there is a loss that does not come within the specific language of section 68-1-11, there is strict liability and unlimited recovery. It may indeed so hold, but it is not applicable within the context of this case.

In *Bidlake,* the plaintiff upon driving up to the hotel preparatory to registering at the hotel was asked by the doorman if he wished his car parked. It was the practice of the hotel to have a doorman or night porter at the entrance to the hotel. Among other things, the doorman or night porter was authorized to arrange to have a guest's vehicle driven to a nearby garage for parking if the guest so desired. Plaintiff did wish to have his car parked and gave the doorman the auto keys. The doorman, instead of making the necessary arrangements for parking, took the car on a frolic of his own in the course of which he looted the glove compartment of the car and damaged the car.

Plaintiff sued the hotel for damage to his car and the value of the articles taken from the glove compartment on a theory of negligence. After a trial to the court, judgment was entered for the defendant. Plaintiff appealed.

On appeal, the Supreme Court of Colorado, citing section 68-1-11, held defendant liable and reversed the judgment.

It is fair to say that the court in its opinion nowhere explicated its *ratio decidendi.* After stating that it could find no applicable Colorado case law, the court cited, with approval, a number of decisions from other states as governing the instant case and reversed.

Whatever *Bidlake* holds, it is clear that it does not purport to discuss the effect of section 68-1-5 or section 68-1-6 or the interplay of those two sections with section 68-1-11.

*First, Bidlake* does not even mention sections 68-1-5 or 68-1-6 much less discuss them. Petitioner candidly concedes as much.

*Second,* there is a question as to whether, under the facts, sections 68-1-5 or 68-1-6 were even applicable.[3] An automobile is obviously not the kind of valuable article contemplated by section 68-1-5, thus it would not come within section 68-1-5 and properly would come within section 68-1-11. As for the articles taken from the glove compartment of the car, the court does speak in one place of "valuable personal property" (292 P.2d at p. 750) and in another place of "a camera and other articles" (292 P.2d at p. 751) but whether these articles were "valuable articles" within the meaning of section 68-1-5 cannot be ascertained from the

---

[3]It would appear that the defendant hotel in *Bidlake* did not think sections 68-1-5 and 68-1-6 applicable since it did not raise those sections as a defense.

opinion of the court. Nor do we know whether the hotel had a safe and posted the necessary notices as provided in section 68-1-5. Accordingly, we find *Bidlake* of no aid in construing sections 68-1-5 and 68-1-6.

We disagree with petitioner's interpretation for it appears to us to belie the plain meaning of sections 68-1-5 and 68-1-6 and, in effect, to turn the statutory intent on end.

As we read the Colorado statutory scheme, it is a fairly comprehensive system regulating the liability of hotel keepers under varying circumstances as follows:[4]

A. A hotel that provides a safe and posts the required notices is not liable *at all* for the loss of or damage to valuable articles such as money, jewelry or ornaments of the guest unless placed in the safe, in which case its liability is limited to the declared value of the articles (§ 68-1-5) provided that in no event can the liability exceed $5,000 unless the hotel has, in writing, assumed a greater liability (§ 68-1-6). Whether the limited liability is based on strict liability or negligence, we need not decide here though we tend to agree with petitioner that it is strict liability.

B. If a hotel does not provide a safe, or if the personal property is of such a nature that though it is "valuable" it could not be stored in a safe, or if the property is not valuable within the meaning of section 68-1-5, then the hotel is *not* liable for loss or damage caused by fire, unforeseen causes or unavoidable accident, *unless* the loss or damage occurs on account of the hotel's negligence, in which case recovery would be limited only by the amount of loss or damage suffered. (§ 68-1-11.)

C. If in B, above, the loss or damage is occasioned by a *foreseeable* cause and other than by fire or unavoidable accident (we shall not pause to inquire as to whether there can be a foreseeable cause to an unavoidable accident), then the hotel is liable either on a theory of common law strict liability or on a theory of negligence for the full amount of loss or damage. Here, too, we incline to the view that the liability is strict rather than based on negligence.[5]

---

[4]There are no reported Colorado cases in which sections 68-1-5 or 68-1-6 were considered or interpreting the interplay between sections 68-1-5, 68-1-6 and 68-1-11. We are thus left to our own devices in attempting such a construction.

[5]Again, we need not decide for, in our view, the stipulated facts bring the case within sections 68-1-5 and 68-1-6 and not within section 68-1-11. However, we note that

■ Applying our analysis to the stipulated facts, real party did provide a safe. The diamonds of which Torczyner was robbed are of the class of articles contemplated by section 68-1-5. The diamonds at the time of the robbery were on Torczyner's person and not in the safe. Thus, the hotel is not liable at all to petitioner, the owner of the gems.

Finally, petitioner makes a further argument in the context of statutory construction of the sections involved. Petitioner urges that if we hold that in the instant case sections 68-1-5 and 68-1-6 apply, we should recognize a "coming and going" exception to those sections.

We take it that by a "coming and going" exception, petitioner means that sections 68-1-5 and 68-1-6 should not apply (1) until the guest has had an opportunity to avail himself of the use of the safe when he is first registering and (2) when the guest is departing from the hotel.

Since, as we have noted, there is no reported decision considering sections 68-1-5 and 68-1-6, there is no guidance to be found in Colorado decisional law. Petitioner suggests that the *Bidlake* case, *supra,* by implication, holds that there is such an exception. In our view, petitioner is engaging in pure speculation in so construing *Bidlake.* Neither are there any California cases that have considered the question. In other jurisdictions where the issue has come up, there appears to be a conflict of authority.

While a persuasive argument, we believe, can be made for a "coming and going" exception, we need not decide the question here. Under the stipulated facts, when Torczyner returned to the hotel and went up to his room, it would appear that he was not yet in the act of departing when he was robbed. Further, Torczyner apparently carried the gems upon his person when he needed to move them. Thus, no reason appears to exist why he could not have placed the diamonds in the safe when he returned to the hotel, gone up to his room and packed, returned to the desk to check out and picked up his diamonds then. We conclude that if there should be a "coming and going" exception, it would not apply to the facts here.

---

Colorado statutes contain no language specifically stating that a hotel's liability can *only* be for negligence (except in the narrow situation contemplated in § 68-1-11). Compare, for example, California Civil Code section 1859 where, specifically, the hotel's liability can *only* be that of a depository for hire.

III. *Do sections 68-1-5 and 68-1-6, as herein construed, violate the due process and equal protection clauses of the Colorado Constitution or the Fourteenth Amendment to the Constitution of the United States?*

We hold that they do not.

Preliminarily, we had occasion to question whether a California court has jurisdiction to rule upon the constitutionality of Colorado statutes. Petitioner has called two cases to our attention where state courts have ruled on the constitutionality of state legislation other than their own. In *State of Alaska* v. *Petronia* (1966) 69 Wn.2d 460 [418 P.2d 755], the Washington Supreme Court was called upon to rule on the constitutionality of the Alaska Net Income Tax Act. Since Washington concededly had jurisdiction of the action and the unconstitutionality of the Alaska Act had been raised as a defense, the Washington Supreme Court said it had "no alternative" (418 P.2d at p. 758) but to rule on the constitutional issue and proceeded to do so. In *Bannister* v. *Bannister* (1942) 181 Md. 177 [29 A.2d 287], a Maryland court had before it a case in which the constitutionality of a California statute was at issue. The Maryland court did pass upon the issue. (See also *Fensterwald* v. *Burk* (1916) 129 Md. 131 [98 A. 358, 3 A.L.R. 1562].)

No cases that we are aware of have held that a state court which has jurisdiction of a cause lacks jurisdiction to rule upon the constitutionality of a sister state statute when that is an issue raised in the cause.

Since concededly we have jurisdiction and the constitutional issues have been raised reluctantly, and since we have no alternative, we address the issue of the constitutionality of the Colorado statutes in question.

A. As to the due process argument, petitioner seems to argue that since at common law there was a cause of action based on unlimited strict liability of the innkeeper for the goods of his guests, it is violative of due process for a state to modify or abrogate this cause of action. It is not our understanding that the due process clause was intended to embalm as a constitutional principle common law causes of action any more than as Justice Holmes said, dissenting, in *Lochner* v. *New York* (1905) 198 U.S. 45, 74, 75 [49 L.Ed. 937, 948, 949, 25 S.Ct. 539], the Fourteenth Amendment was intended to enact into constitutional law Mr. Herbert Spencer's Social Statics.

The Colorado Supreme Court has had occasion to consider such a question in *O'Quinn* v. *Walt Disney Productions, Inc.* (1972) 177 Colo. 190 [493 P.2d 344]. At issue in *O'Quinn* was the Colorado workmen's compensation statutes which denied an employee of a subcontractor any relief, in tort, for the negligence of the general contractor or the owner of the land upon which the work was performed, relegating the employee to his workers' compensation benefits. The employee contended that insofar as the statutes deprived him of his common law action in tort against the general contractor and landholder, it deprived him of property without due process of law and of equal protection of the laws in violation of the Colorado and federal Constitutions. The court held:

"As to plaintiff's . . . [due process] argument, this court and others have many times considered whether or not the abrogation of a common law remedy constitutes a taking under Fifth and Fourteenth Amendments to the United States Constitution and article II, section 25 of the Colorado constitution. As a general proposition, courts have concluded that, so long as a statute in abrogation of the common law does not attempt to remove a right which has already accrued, there is no taking. See Finn v. Industrial Commission, 165 Colo. 106, 437 P.2d 542; Tipton v. A., T. and S. F. Railway, 298 U.S. 141, 56 S.Ct. 715, 80 L.Ed. 1091; Northern Pacific Railway Co. v. Meese, 239 U.S. 614, 36 S.Ct. 223, 60 L.Ed. 467; Lowman v. Stafford, 226 Cal.App.2d 31, 37 Cal.Rptr. 681; Clark v. Olson, 96 Mont. 417, 31 P.2d 283.

"In *Lowman, supra,* the court stated: 'Although rights of property which have been created by the common law cannot be taken away without due process, the law itself, as a rule of conduct, may be changed at will by the Legislature . . . . ". . . It may create new rights or provide that rights which have previously existed shall no longer arise, and it has full power to regulate and circumscribe the methods and means of enjoying those rights, so long as there is no interference with constitutional guarantees." ' " (493 P.2d at p. 345.)

At the time of the robbery, sections 68-1-5 and 68-1-6 had been in effect for many years; no common law right could have accrued in petitioner, it follows that petitioner's due process argument must fail.

■ B. We address now the question of equal protection.

We begin with an inquiry into the purposes of sections 68-1-5 and 68-1-6 and we shall conclude with an examination as to whether the

sections rationally relate to that purpose. (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254].)

It is clear that the purpose of sections 68-1-5 and 68-1-6 is to protect the hotel against unrestricted liability for articles of value belonging to a guest that can be conveniently stored in a safe or some similar secure receptacle where the hotel doesn't even know that the guest has such valuables provided that the hotel makes available such a secure facility and posts notice to that effect. If the guest chooses not to avail himself of that secure facility, having notice thereof, it is surely not an unreasonable legislative decision to exculpate the hotel from any liability if the guest thereafter sustains the loss of or damage to those valuable articles. On the other hand, if the guest does place his valuables in the safe, if then there is loss or damage, the hotel is liable up to the value declared by the guest but not more than $5,000. Even in these days of inflation, $5,000 is not a minimal sum, as petitioner suggests, for such valuables as the ordinary hotel guest carries with him. In any event, we cannot say that such a limitation is irrational. In addition, section 68-1-6 permits the guest to seek a greater liability from the hotel if the hotel is willing to assume it.

Further, if the hotel does not provide a safe or put the guest on notice that there is a safe available, then, as we read the statutes, under section 68-1-11, there is unlimited liability either in negligence or on a theory of strict liability as to valuables that could be stored in a safe. In addition, there is unlimited liability for all other personal property of the guest. (See our discussion in II, above.)

We need not examine all the permutations or combinations possible under the Colorado innkeeper statutes for it appears to us that the means employed by the Colorado Legislature to effectuate its legislative purpose are rationally related thereto.

We have considered *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505] upon which petitioner relies in great measure. That case presents a statutory classification completely at variance with that involved here so that we do not regard it as suggesting a holding that the statutes here involved deny equal protection. On the contrary, implicitly, the *Brown* case supports our view for the evils of the statutory scheme found there by the court do not exist here.

We conclude by noting that "[t]he prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say

that that point has been reached here." (*Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 489 [99 L.Ed. 563, 573, 75 S.Ct. 461].)

Accordingly, insofar as the trial court held California law applicable in its order of November 3, 1977, the trial court is directed to set aside its order and the cause is remanded to the trial court for such further proceedings as may be appropriate and not inconsistent with views expressed herein. Real party in interest to have his costs.

White, P. J., and Scott, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied December 20, 1978.