JOSEPH FENSTERWALD

*vs.*

SELMA R. BURK.

*Acts of Assembly: constitutionality of—; duty of courts.  Mar-
riage laws: of other States.  Prohibited degrees of affinity
or consanguinity: Rhode Island; Jews;
special provisions for—.*

To declare an Act of the State Legislature unconstitutional
or invalid is the exercise of a judicial power of a grave and
delicate nature, and one that should not be exercised in a doubt-
ful case.　　　　　　　　　　　　　　　　　　　　　　p. 136

Courts should be reluctant to declare unconstitutional an
Act of another State, where the same has not been passed on by
the court of last resort of that State.　　　　　　　　p. 137

The provisions in the Code of Rhode Island, that declare
that the prohibition of the Code against the marriage of parties
who are within the degrees of affinity or consanguinity there
named, shall not extend to or affect any marriage among Jews,
within the degrees allowed in their religion, are not to be
declared in violation of the Constitution of that State when its
own courts are silent on the subject.　　　　　　　　p. 139

*Decided June 23rd, 1916.*

Appeal from the Circuit Court of Baltimore City.  (DAW-
KINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Whitelock* and *Samuel Want* (with whom were *John B. Deming* and *W. Thomas Kemp* on the brief), for the appellant.

*Edward M. Hammond* (with whom was *Albert S. Gill* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order or decree of the Circuit Court of Baltimore City sustaining a demurrer to and dismissing the bill filed by the appellant against the appellee asking that the marriage of the appellee with one Charles Burk, now deceased, be declared null and void.

The bill alleges that the appellant is a nephew and one of the heirs at law of said Charles Burk, who died on the 17th day of October, 1913, leaving surviving him as his nearest relatives one sister, Hanna Rothschild, and eleven nephews and nieces, including the appellee, Selma R. Burk. That prior to the 17th day of January, 1913, the said Charles Burk had in his possession his last will and testament by which his estate was distributed among his nephews and nieces, including the appellant, and that at such time he was about seventy years of age and was suffering from a complication of diseases and from the general infirmities, mental and physical, of old age. That for a long time prior to the last named date the appellee had been the stenographer of the firm of Burk-Fried & Company of Baltimore City, of which Charles Burk as well as the appellant was a member and while so employed she lived in the house in which Charles Burk resided, that she was an object of his bounty and affection and was treated by him "as if she had been one of his own children," and as a result of their relation she exercised great influence over him and sought thereby to se-

cure a large part of his estate. That in pursuance "of the said fraudulent purpose she resolved to induce him to go through a marriage ceremony with her for the purpose of placing him in a position where he would be compelled to make a will leaving her a substantial portion of his estate so as to prevent her from otherwise claiming a dower interest therein."

The bill then alleges that as the laws of Maryland prohibited their marriage, because related as nephew and niece, she employed counsel and inquired of him if there was any State in the Union by the laws of which an uncle and niece could be lawfully married and was advised that such a marriage could be entered into in the State of Rhode Island, and that he "was prevailed upon by her to accompany her to the City of Newport, Rhode Island, where after remaining for several days they went through a marriage ceremony" and immediately afterwards returned to the City of Baltimore where they continued to reside until his death.

The bill further alleges that if the marriage be "allowed to stand, it will deplete his estate by taking therefrom for the benefit of the said Selma R. Burke the statutory widow's allowance and also the dower and personal estate to which a widow is entitled under the laws of the State of Maryland, and it likewise entitles the said Selma R. Burk to a preference under the laws of the State of Maryland in the administration of the estate of said Charles Burk; so that the proprietary interest" of the appellant as an heir at law and as devisee of Charles Burk, in the event that the aforementioned will be declared to be his last will and testament, will be substantially affected. That upon his death it developed that the will above referred to could not be found, but that another was produced "wherein the greater portion of the estate of said Charles Burk was devised to the said Selma R. Burk, while no provision at all was made therein for the complainant," although he was a favorite nephew.

It is then alleged "that at or about the time of the institution of this suit a caveat will be filed in the Orphans'

Court of Baltimore City" to the last-mentioned will upon the ground of his incapacity to make it.

The bill further alleges that the marriage in Rhode Island was in pursurance of a fraudulent plan to evade the laws of the State of Maryland and therefore not entitled to recognition under the laws of this State. It is then charged in the bill that the laws of the State of Rhode Island "prohibited the marriage of an uncle and niece and render such a marriage absolutely null and void, but there is a further provision in the said laws upon which the said respondent apparently relied, to the effect that the prohibitions of the law shall not apply to members of the Jewish faith, where the marriage of the particular parties is permitted under the terms and regulations of their religion; that while this exception purports to sustain the validity of the said marriage, as far as the State of Rhode Island is concerned, the same is absolutely null and void, both under the Constitution of the State of Rhode Island and the Constitution of the United States."

The Statute of Rhode Island upon the subject of marriage is filed as an exhibit with the bill. It is Chapter 243 of the Code of 1909. In section 1 it prohibits a man from marrying his niece, and in section 2 a woman is prohibited from marrying her uncle, and by the third section a marriage between such parties is declared to be null and void and their issue deemed and adjudged illegitimate.

The fourth section provides, "that the provisions of the preceding sections shall not extend to, or in any way affect, any marriage which shall be solemnized among the Jews, within the degrees of affinity or consanguinity allowed by their religion."

The ninth section provides that, "any marriage which may be had and solemnized among the people called Quakers, or Friends, in the manner and form used or practised in their societies, or among persons professing the Jewish religion according to their rites and ceremonies, shall be good and valid in law," and in the 22nd section is found the follow-

ing provision, "no marriage solemnized * * * among persons professing the Jewish religion according to their respective rites and ceremonies, shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected by want of jurisdiction or authority in such person or society nor by reason of non-compliance with any of the requirements of this chapter, if the marriage is in other respects lawful and has been performed with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage."

The bill alleges that the parties went to Newport, Rhode Island, to be married, and that a marriage was celebrated at that place. It however alleges that under the law of that State marriages between uncles and nieces are forbidden, except those of the Jewish faith, "where the marriage of the particular parties is permitted under terms and regulations of their religion." It is the fourth section of the Act that creates the exception, and it is clear in its provisions that the preceding sections which contain the prohibition against such marriages shall not extend to or in any way affect any marriage which shall be solemnized among the Jews within the degrees of affinity or consanguinity allowed by their religion. It is then alleged not very directly but with sufficient clearness that the contracting parties were of the Jewish faith, and this being alleged, with no allegation that they were not within the degrees of affinity or consanguinity allowed by their religion, the invalidity of the marriage for such cause is not alleged.

Therefore if the contracting parties, being of the Jewish faith, fall within the aforesaid exception or provision of the Act, and there is no allegation that they do not, the marriage of these parties was not in violation of the Rhode Island law, unless, as contended for by the appellant, the exception or proviso was in contravention of the Constitution of Rhode Island or the Federal Constitution.

After a very careful research we have been unable to find any case in Rhode Island or elsewhere, and the counsel have

cited no case where the constitutionality of this Act has ever been raised and passed upon by the Supreme Court of Rhode Island or by any other Court in any other jurisdiction, although this statute of Rhode Island has been recognized as valid and has been so acted upon for a half century and more.

It is section 3 of Article 1 of the Constitution of the State of Rhode Island adopted in 1842, that the appellant contends is violated by the aforesaid exception or proviso contained in section 4 of the above quoted statute. The section of the Constitution is as follows: "That no man shall be compelled to frequent or to support any religious worship, place, or ministry whatever, except in fulfilment of his own voluntary contract; nor enforced, restrained or burdened in his body or goods; nor disqualified from holding any office; nor otherwise suffer on account of his religious belief; and that every man shall be free to worship God according to the dictates of his own conscience, and to profess and by argument to maintain his opinions in matters of religion; and that the same shall in nowise diminish, enlarge or affect his civil capacity."

The appellant contends as we understand him that the civil capacity of a member of the Jewish faith is within the meaning of the Constitution enlarged by reason of this statute, and thus the constitutional provision is violated, but just how the statute has this effect he does not attempt to point out or if so not with that clearness that is required by Courts before striking down a statute because unconstitutional.

This Court has said in passing upon the constitutionality of Acts of our own State that a legislative act should not be pronounced unconstitutional or invalid in a doubtful case. It is an exercise of a judicial power of a grave and delicate nature which can only be warranted in a clear case. *Harrison* v. *Harrison*, 22 Md. 491; *Regents* v. *Williams*, 9 G. & J. 383; *State* v. *B. & O. R. R. Co.*, 12 G. & J. 438; *Commissioners of Public Schools of A. Co.* v. *The County Com-*

*missioners,* 20 Md. 449. And we should be still more re-
luctant in pronouncing unconstitutional the Act of a sister
State where the same has never been passed upon by the
highest Court of that State.

In this case, after a careful consideration of the objections
made to the validity of the statute, we do not feel warranted
or justified in saying that it violates either the State or
Federal Constitution.

Treating the statute of Rhode Island as constitutional the
marriage in that State is valid; but how is such marriage
to be regarded in Maryland? As JUDGE McSHERRY said in
speaking for this Court in *Jackson* v. *Jackson,* 82 Md. 29:
"In general a marriage valid where performed is valid every-
where. To this broad rule there are, however, exceptions.
'These exceptions or modifications of the general rule may
be classified as follows: *First,* marriages which are deemed
contrary to the law of nature as generally recognized in
Christian countries; *second,* marriages which the local law-
making power has declared shall not be allowed any validity.
* * * To the first class belong those which involve polygamy
and incest; and in the sense in which the term incest is used,
are embraced only such marriages as are incestuous accord-
ing to the generally accepted opinion of Christendom, which
relates only to persons in direct line of consanguinity, and
brothers and sisters. The second class, *i. e.,* those prohibited
in terms by the statute, presents difficulties that are not al-
ways easy of solution, and have led to conflicting decisions.
This class may be subdivided into two classes: *First,* where
the statutory prohibition relates to form, ceremony and quali-
fication, it is held that compliance with the law of the place
of marriage is sufficient; and its validity will be recognized
not only in other States generally but in the State of the
domicil of the parties, *even when they have left their own
State to marry elsewhere, for the purpose of avoiding the
laws of their domicil.* Instead of being called a subdivision
of the second class of exceptions, it would be more accurate
to say that it is an exception to the exception and falls with-

in the operation of the general rule first announced, if valid. where performed, valid everywhere. To the second subdivision of the second class of exceptions belong cases which, prohibited by statute, may or may not embody distinctive State policy as affecting the morals or good order or society.' " *Pennegar* v. *The State of Tennessee,* 87 Tenn. 244; S. C. with copious notes, 2 L. R. A. 703; *State* v. *Tutty,* 41 Fed. Rep. 753; *State* v. *Ward,* 7 L. R. A. 50; *Brook* v. *Brook,* 9 H. L. C. 193; *Commonwealth* v. *Graham,* 16 L. R. A. 580; S. C., 157 Mass. 73.

The provision contained in the statute of this State, Act of 1777, Chapter 12, prohibiting the marriage of uncles and nieces, does not, we think, fall within any of the enumerated exceptions to the general rule. It is not incestuous "according to the generally accepted opinion of Christendom." Mr. Bishop, in his work on *Marriage & Divorce,* sec. 861, says: "An incestuous marriage, within the meaning of our exception is generally stated to be not every one forbidden on account of consanguinity or affinity by the legislative enactments of the country in which its validity is drawn in question; for a State may prohibit from motives of policy or from religious considerations, matrimonial connections between persons related in blood or affinity, not incestuous by natural law." Nor do we think such a marriage comes within the "second" exception to the rule, to wit: Marriages which the local law-making power has declared shall not be allowed *any* validity, such as those affecting the morals or good order of society.

In *Harrison* v. *Harrison, supra,* our predecessors held a marriage between uncle and niece was not by the laws of this State void but voidable, the effect of which was to hold that such marriage did not fall within the class that was not to be allowed *any* validity, if so it would have been void and not voidable.

It is said in *Bishop,* secs. 258 and 259, that, "a marriage is termed void when it is good for no legal purpose and its invalidity may be maintained in any proceeding in any

Court between any parties, whether in the lifetime or after the death of the supposed husband and wife, and whether the question arises directly or collaterally," and "a marriage is voidable when in its constitution there is an imperfection which can be inquired into only during the lives of both of the parties in a proceeding to obtain a sentence declaring it null. Until set aside it is practically valid; when set aside it is rendered void from the beginning."

The decision of the Court in *Harrison* v. *Harrison, supra,* holding that the marriage was voidable in effect held that the marriage did not fall within that class of marriages that was not to be allowed *any* validity.

Holding as we do that this case does not fall within any of the exceptions to the general rule, the marriage being valid in Rhode Island, is valid in this State. Therefore, the order or decree sustaining the demurrer to the appellant's bill will be affirmed.

> *Order or decree affirmed, with costs to the appellee.*