## L. W. BANNISTER *v.* H. F. BANNISTER (LOCKARD)
[No. 62, October Term, 1942.]

*Decided December 7, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, COLLINS, FORSYTHE, MARBURY, and GRASON, JJ.

*Linwood L. Clark* for the appellant.

*William J. McWilliams*, with whom were *McWilliams, Duckett & Haley* on the brief, for the appellee.

FORSYTHE, J., delivered the opinion of the Court.

On March 17, 1942, the appellant, Leland Wesley Bannister, filed a bill of complaint in the Circuit Court for Anne Arundel County, Maryland, against his wife, Hattie Fay Bannister, appellee, in which he asked for a decree annulling their marriage. An answer was filed to which the appellant demurred. Thereupon an amended bill was filed in which the prayers for relief asked (a) that the marriage between the appellant and the appellee be declared void *ab initio*, and (b) for a divorce *a vinculo matrimonii*. The answer was refiled, and the appellant again demurred to the answer. The court overruled the demurrer and dismissed the amended bill, and the appellant appeals.

It is alleged in the amended bill that the appellant and the appellee were married on March 10, 1935, in the State of California; that at that time the appellee represented that she had secured a divorced from her former husband, Howard Lockard.

The answer avers that on October 16, 1929, the appellee obtained, in the Superior Court of the County of Santa Barbara, California, an interlocutory decree of divorce from Howard Lockard. Filed with the answer, as Exhibit A, is the stipulation signed by counsel representing both of the parties to that cause, in which it

appears that a final decree of divorce was entered by the said court on May 27, 1935, about two and one-half months after the marriage of the appellant and the appellee. Then, on the 4th day of April, 1942, the same court, but another judge, passed the following order: "That the Final Decree of Divorce in this cause be signed, dated, filed and entered *nunc pro tunc* granting the Final Decree of Divorce as and of the 18th day of October, 1930, the date when the same could have been given or made by the court if applied for."

That order was based upon the power and authority conferred upon the court by the Civil Code of California, Section 131.5 and Section 133, as amended by the legislature in 1941. The statute is as follows: "Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence, the same has not been signed, filed or entered, if no appeal has been taken from the interlocutory judgment or motion for a new trial made, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed or entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. The court may cause such final judgment to be signed, dated, filed and entered *nunc pro tunc* as aforesaid, even though a final judgment may have been previously entered where by mistake, negligence or inadvertence the same has not been signed, filed or entered as soon as it could have been entered under the law if applied for. Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof."

Prior to the filing of the bill in the Circuit Court for Anne Arundel County, Maryland, all of the proceedings in this case, the appellee's first marriage, her divorce, and her marriage to the appellant, took place in California.

The sole contention of the appellant is that his marriage to the appellee is not valid in Maryland because it took place before the appellee's interlocutory decree of divorce in California was made final.

It is now the settled law that marriages are valid everywhere if the requirements of the marriage laws of the State where the contract of marriage takes place are complied with; and one of the elements of a marriage relation is the capacity of the parties to enter into the marriage contract. *Restatement of Conflict of Laws*, Sec. 121. The States have the power to regulate, by statute, marriages, contracted or dissolved, within their respective jurisdictions, and such statutes are uniformly held to be constitutional. *Harrison et al. v. State of Maryland*, 22 Md. 468, 85 *Am. Dec.* 658. At page 493 of 22 Md. in that opinion it is stated: "The right to confirm is the necessary corollary of a power to dissolve marriage by divorce. * * * Where the parties contracting marriage labor under legal disabilities, the contract is liable to be dissolved by the courts or affirmed by the Legislature."

In *Hopkins v. Hopkins*, 287 Mass. 542, 192 N. E. 145, 95 *A. L. R.* 1286, the wife married while the husband had a previous wife living. The statute validated the marriage from and after the removal of the impediment, which was the death of the first wife, provided the parties continued, in good faith, to live together.

The contention of the 'appellant, that the California statute was not passed until after the date of the marriage does not prevent the statute having effect, unless there is a clear expression in the statute that it shall not be retroactive. In *Lufkin v. Lufkin*, 182 Mass. 476, 65 N. E. 840, the court held that a statute applied where the marriage took place before the statute was passed,

and the impediment was removed after it went into effect.

In *Harrison v. State, supra,* it was contended the statute was unconstitutional because it was given retroactive effect. But this court said at page 492 of 22 Md.: "There is no clause in our Constitution inhibiting retroactive laws in civil cases. The prohibition of *ex post facto* laws applies only to criminal cases." *Elliott v. Elliott,* 38 Md. 357.

Also, we have held in *Bartlett v. Ligon,* 135 Md. 620, 626, 109 A. 473, that laws are not unconstitutional when applied to pre-existing cases, unless they impair the obligation of contracts or are *ex post facto.* 16 *Corpus Juris Secundum, Constitutional Law,* Sec. 414, p. 856.

Considering the statute of another State, this court said, in *Fensterwald v. Burk,* 129 Md. 131, 136, 98 A. 358, 360: "In passing upon the constitutionality of Acts of our own State that legislative Act should not be pronounced unconstitutional or invalid in a doubtful case, * * * and we should be still more reluctant in pronouncing unconstitutional the Act of a sister State where the same has never been passed upon by the highest court of that State." In this case our attention has not been called to, nor have we found, any decision of the California courts in reference to the Act here involved.

In this statute there are no terms or expressions which can reasonably be construed as indicating an intention on the part of the California Legislature that it should affect only cases arising after its passage. On the contrary there is very good reason to believe that it was the definite intention of the Legislature that the Act should apply to cases which arose prior to its passage. It is an Act entirely curative in its intention and very like the Acts correcting and validating defectively executed deeds.

In this case it does not appear that there is any issue of the marriage, but undoubtedly there will arise cases in which children will be involved, and public policy demands that equitable remedies, so long as they do not

.impair contracts, and are not *ex post facto,* be provided. The use of the words *nunc pro tunc* in the statute leave no doubt that the Act was intended to apply retroactively. The Act contains clear expressions indicating that its purpose was to correct such mistakes as occurred in this case, and we find no rule of law, or other justifiable reason to hold ineffective an Act of another State so far not held invalid by the highest court of that State.

*Decree affirmed, appellant to pay the costs.*